IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BEN LOPEZ,

      Plaintiff,

  v.

UNITED PARCEL SERVICE, INC.,

      Defendant.

_____/

No. C 08-05396 SI

**ORDER DENYING PLAINTIFF'S MOTION FOR ENFORCEMENT OF COLLATERAL ESTOPPEL and GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

On February 26, 2010, the Court heard oral argument on plaintiff's motion for enforcement of collateral estoppel and defendant's motion for summary judgment. Having considered the arguments of the parties and for good cause shown, the Court hereby rules as follows.

## BACKGROUND

This litigation arises from an employment dispute concerning plaintiff Ben Lopez's classification by defendant United Parcel Service ("UPS") as an employee exempt from overtime compensation under California law. Plaintiff was employed by UPS from April 1993 to June 2008, and his claims in this matter are based on the alleged misclassification of five full-time supervisory positions he held between March 2001 and June 2008: Hub Supervisor, Preload Supervisor, On-Road Supervisor, Training and Retention Supervisor, and On-Job Supervisor. Complaint ¶ 4; Lopez Decl. ¶ 2.

UPS's delivery operations are structured as follows. Packages submitted for shipping are taken to a central UPS facility for processing. At these central Hubs, hourly employees unload, sort, and load packages onto large trucks for transport to regional Package Centers that service final delivery destinations. Comer Decl. ¶ 8. Hourly Hub employees report to part-time supervisors, who in turn

report to a Hub Supervisor. *Id.* ¶ 11. Hub Supervisors report to a Hub Manager. *Id.* ¶ 12. Once packages arrive at a regional Package Center, they enter the Preload operation, where they are sorted and loaded onto delivery vans. Conyers Decl. ¶ 4. As in the Hub operation, the chain of command flows from hourly Preload employees to part-time supervisors to Preload Supervisors to Preload Managers. *Id.* ¶¶ 3, 8. UPS Drivers, by contrast, are organized into geographic teams that report directly to On-Road Supervisors. *Id.* ¶ 6. Groups of On-Road Supervisors are supervised by a Central Manager. *Id.*

The remaining two job titles at issue, Training and Retention Supervisor and On-Job Supervisor, concern the provision of administrative support to the delivery operations described above. Training and Retention Supervisors oversee part-time supervisors in the process of training and evaluating new hourly Hub employees, ensuring safety compliance, and improving employee retention. Joshua Decl. ¶¶ 5-7.[1] The On-Job Supervisor position was part of a specific effort by UPS to standardize and improve its package sorting system and delivery routes. Copeman Decl. ¶ 4. On-Job Supervisors were responsible for riding with drivers to study their routes, which they would then report back to the Industrial Engineering team developing the new sorting system. *Id.* ¶¶ 7, 12.

Plaintiff was formerly a member of a certified class of UPS employees in *Marlo v. United Parcel Service, Inc.*, No. 03-04336, an action filed in 2003 in the Central District of California. *Marlo* was decertified prior to trial, and plaintiff and a number of other former class members filed individual actions against UPS. Plaintiff initiated the present action in the Alameda County Superior Court on September 26, 2008, asserting the following six causes of action under California law: (1) failure to pay overtime compensation; (2) failure to provide meal and rest breaks; (3) failure to maintain and furnish accurate wage statements and time records; (4) conversion; (5) "waiting time" penalties due to UPS's alleged failure to pay accrued wages immediately upon plaintiff's termination; and (6) unfair business practices. On February 19, 2009, UPS removed the action to this Court on diversity grounds. This action was deemed related to two other individual wage and hour actions pending against UPS in this

---

[1] Plaintiff objects to the Joshua Declaration on the ground it was not signed by the declarant. In light of Joshua's submission of a supplemental declaration confirming that Joshua reviewed and signed the original declaration, which was subsequently lost during facsimile transmission, the Court overrules plaintiff's objection.

district, *Rhinehart v. United Parcel Service, Inc.*, No. 09-741 SI, and *Kline v. United Parcel Service, Inc.*, No. 09-742 SI. *Rhinehart* has settled and *Kline* remains pending before this Court.

Presently before the Court are plaintiff's motion for enforcement of collateral estoppel and defendant's motion for summary judgment.

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

On summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

### I. Plaintiff's Motion for Enforcement of Collateral Estoppel

Plaintiff seeks a ruling that UPS is collaterally estopped from litigating the exempt status of two of the positions he held during the period at issue, Hub Supervisor and Preload Supervisor, because the

non-exempt nature of these positions was conclusively established in *Marlo*, the Central District of California case in which plaintiff was formerly a class member. After the class was decertified, Mr. Marlo's individual claims went to trial, where the jury determined that UPS had improperly classified Mr. Marlo as exempt during the time period he held the Hub Supervisor and Preload Supervisor positions. The district court denied UPS's post-trial motions and entered judgment in Mr. Marlo's favor.        Under California law, the doctrine of collateral estoppel applies where "the same issue is presented in both actions, the party to be precluded was a party to the earlier proceeding, the issue was actually decided in the earlier action after a full and fair opportunity for litigation, and the earlier action ended in a judgment that is final, valid, and on the merits." *Kopp v. Fair Political Practices Comm'n*, 905 P.2d 1248, 1298 (Cal. 1995); *see also Lucido v. Superior Court*, 795 P.2d 1223, 1225 (Cal. 1990) ("[T]he issue sought to be precluded from relitigation must be *identical* to that decided in a former proceeding") (emphasis added).[2] Offensive non-mutual collateral estoppel, the type at issue here, applies where a plaintiff seeks to prevent a defendant from relitigating an issue that the defendant previously litigated unsuccessfully in a separate action against a different party. *State of Idaho Potato Comm'n v. G&T Terminal Packaging, Inc.*, 425 F.3d 708, 713 n.3 (9th Cir. 2005).

UPS contends that the *Marlo* judgment lacks collateral estoppel effect in this action because a decision as to Mr. Marlo's exempt status does not constitute a conclusive determination of the issue of plaintiff's exempt status. The Court agrees with UPS. UPS correctly cites California case law holding that the question of an employee's exempt status turns on the individual circumstances of that person's employment, and that a finding of exempt status as to one person is not necessarily applicable to any other person, even a person holding the same job. *See Nordquist v. McGraw-Hill Broad. Co.*, 38 Cal. Rptr. 2d 221 (Cal. Ct. App. 1995) (prior ruling that plaintiff's successor was an exempt professional was "not dispositive . . . because the decision is fact specific. Even if the evidence in the two cases were identical, the decision by one factfinder does not preclude a contrary finding by another fact finder.") Plaintiff points out that UPS's evidentiary showing during the *Marlo* trial largely consisted of common evidence developed during class discovery. However, the parties' contentions with respect to plaintiff's

---

[2] In diversity cases where only state substantive law is at issue, federal courts apply state preclusion law. *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 884 (9th Cir. 2007).

exempt status in this case focus entirely on plaintiff's individual circumstances, including the specific tasks he performed and how much time he spent on these tasks. In light of this individual focus, the *Marlo* court's determination regarding Mr. Marlo's exempt status is not entitled to preclusive effect. The Court therefore DENIES plaintiff's motion for enforcement of collateral estoppel.[3]

## II.     UPS's Motion for Summary Judgment

### A.     Plaintiff's Exempt Status

UPS seeks summary judgment on each of plaintiff's six causes of action. Because plaintiff's entire case is grounded on his contention that he was misclassified as exempt from overtime compensation, UPS first seeks a ruling that it has established as a matter of law that plaintiff fits within one or more of the exemptions established by California labor law.

Under California law, an employee is presumptively entitled to overtime compensation for all hours worked in excess of eight hours per day or forty hours per week. Cal. Lab. Code § 510(a). An employer who claims that an employee is exempt from overtime compensation bears the burden of proving as an affirmative defense that the exemption applies. *Gomez v. Lincare, Inc.*, 93 Cal. Rptr. 3d 388, 395 (Cal. Ct. App. 2009). "Exemptions are narrowly construed against the employer and their application is limited to those employees plainly and unmistakably within their terms." *Nordquist*, 38 Cal. Rptr. 2d at 226. At issue in this case are the exemptions for "executive" and "administrative" employees set forth in section 515(a) of the California Labor Code.

#### 1.     Executive Exemption

An employer seeking to apply the executive exemption must show that the employee: (1) is responsible for management of "the enterprise in which he/she is employed or of a customarily

---

[3] Plaintiff further asserts that UPS made a judicial admission of the non-exempt status of the Hub and Preload Supervisor positions when it stated in its related case notice that the present action involves the same subject matter and issues as the *Marlo* action. *See* UPS's Notice of Pendency, Docket No. 6. "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Am. Title Inc. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (citation omitted). In the Court's view, UPS's notice did not amount to a formal admission of any fact. A related case notice is merely an administrative means of notifying the Court of related proceedings and has no bearing on the merits of the action.

1  recognized department or subdivision thereof"; (2) has authority to hire or fire other employees, or have

2  his suggestions and recommendations as to hiring, firing, advancement, promotion, or other changes in

3  status be given "particular weight"; (3) "customarily and regularly exercises discretion and independent

4  judgment"; and (4) is primarily engaged in exempt job duties, including "all work that is directly and

5  closely related to exempt work and work which is properly viewed as a means for carrying out exempt

6  functions." Cal. Code Regs. tit. 8, § 11090(1)(A)(1).[4]

7       UPS seeks a ruling that plaintiff was properly subject to the executive exemption in his positions

8  as Hub Supervisor, Preload Supervisor, On-Road Supervisor, and Training and Retention Supervisor.

9  The parties have submitted the following evidence in support of their respective positions: plaintiff's

10  declaration; the declarations of numerous UPS managers and human resources personnel;[5] and plaintiff's

11  deposition testimony and associated exhibits.[6]  On the basis of this record, the Court concludes that

12  material disputes of fact preclude summary judgment regarding the application of the executive

13  exemption to each of the four positions at issue.

15                    **a.    Discretion and Independent Judgment**

16       The most significant dispute concerns whether plaintiff enjoyed discretion and independent

17  judgment in his positions as Hub, Preload, On-Road, and Training and Retention Supervisor.  "[T]he

_____

19       [4]  The executive exemption also requires a showing that the employee customarily and regularly directs the work of at least two other employees and meets a salary threshold of at least two times the minimum wage.  Plaintiff does not dispute that these elements have been met.

21       [5] Plaintiff objects to and asks the Court to disregard these declarations on the ground they were not timely filed.  UPS's summary judgment motion was filed on January 22, 2010, the deadline previously set by the Court.  The supporting documents, however, were filed "between midnight and 12:46 a.m. Saturday morning, January 23, 2010." Pltf. Obj. to Late Filing at 1. The Court finds that this delay of less than one hour did not prejudice plaintiff's ability to prepare his opposition.  Additionally, the Court wishes to resolve this dispute on its merits by considering all the evidence the parties have submitted.  Plaintiff's objection is therefore overruled.

25       [6] Plaintiff also offers a partial transcript of the testimony of Ben Ruvalcaba, a witness at the *Marlo* trial, who described the level of discretion Mr. Marlo was able to exercise in his role as a UPS supervisor.  As defendant correctly points out, this testimony is inadmissible hearsay. Federal Rule of Evidence 804(b)(1) provides a hearsay exception for former testimony where it has been shown that the declarant is unavailable to testify.  Plaintiff has made no attempt to show Mr. Ruvalcaba is unavailable or that the transcript is otherwise admissible.  Accordingly, Mr. Ruvalcaba's testimony will not be considered in ruling on the present motion.

exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct" with "the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." 29 C.F.R. § 541.207(a) (2002).[7] Courts must distinguish between the exercise of discretion "and the use of skill in applying techniques, procedures, or specific standards." *Id.* § 541.207(b). "An employee who merely applies his knowledge in following prescribed procedures or determining which procedure to follow, or who determines whether specific standards are met . . . , is not exercising discretion and independent judgment." *Id.* § 541.207(c)(1). Additionally, to meet this element, the employer must show that the employee's exercise of discretion and judgment is "'consistent,' or even 'customary and regular.'" *White v. Digex, Inc.*, 149 F. App'x 655, 657 (9th Cir. 2005) (quoting 29 C.F.R. § 541.2) (alterations omitted).

In UPS's view, plaintiff is an exempt executive as a matter of law because the role of a supervisor "*necessarily* requires the exercise of discretion and independent judgment." Reply at 5 (original emphasis). As such, UPS's summary judgment motion devotes comparatively little attention to this issue, simply citing portions of plaintiff's deposition in which he described job duties that involved decision-making of some kind. *See, e.g.*, Lopez Depo. at 269:13-17 (during Hub operation, plaintiff was "on [his feet]," "supervising [his] area of responsibility," and "making sure that the hourly employees were doing their jobs"); 387:24-388:16 (during Preload operation, plaintiff made sure employees followed "methods to flow the packages efficiently," pinpointed problem areas, and moved employees to solve "backups or bottlenecks"); 283:19-22 (plaintiff could also delegate these tasks to a part-time supervisor); 149:24-153:22, 351:1-12, 355:1-20 (as Training and Retention Supervisor, plaintiff maintained records on safety compliance, developed initiatives to improve safety and employee retention, proctored computer-based training programs, and delegated authority to part-time supervisors to conduct training); 201:15-203:15 (as On-Road Supervisor, plaintiff took steps to address route issues, including conducting informal training, formal retraining, or conferring with other supervisors).

However, plaintiff's deposition contains numerous other statements, not cited by UPS, which at the very least raise an issue of fact regarding the extent to which plaintiff was simply "appl[ying] his

---

[7] California law expressly incorporates the 2002 version of parallel federal regulations promulgated under the FLSA. *See* Cal. Code Regs. tit. 8, § 11090(1)(A)(1)(e), (1)(A)(2)(f).

knowledge in following prescribed procedures" rather than "exercising discretion and independent judgment." 29 C § 541.207(c)(1). For example, plaintiff testified that, in general, he simply focused on applying UPS policies, or what he called "methods," "consisten[tly] . . . towards everybody" he supervised. Lopez Depo. at 74:6-10. Additionally, plaintiff offered testimony tending to show that his decision-making process in each of the specific positions at issue was tightly circumscribed. *See id.* at 71:23-72:13, 340:15-341:1 (as On-Road Supervisor, plaintiff checked driver performance against set benchmarks and was responsible for "correct[ing] the methods that weren't being followed"); 82:7-13 (as Preload Supervisor, worked under set guidelines for pace of package sorting); 161:5-14, 182:9-183:7 (as Hub Supervisor, role was to "make sure that the employees were following the process" to ensure quality of service, not to "improv[e] the quality of the process itself"); 349:1-20 (as Training and Retention Manager, plaintiff proctored computer-based self-training programs).

UPS emphasizes the fact that plaintiff testified he was trained to make decisions. Plaintiff's testimony on this point, however, was equivocal. *See id.* at 162:4-11 (Question: "And in that [full-time supervisor] training they taught you – they taught you how to make decisions?" Answer: "I believe so. I can't remember. I think so, yes."). Additionally, plaintiff followed up his answer to counsel's question by emphasizing yet again that his training simply taught him to "follow[] the process." *Id.* at 162:18. Accordingly, the Court concludes that disputed issues of fact on the discretion and independent judgment element preclude summary judgment on any of the four positions at issue.

### b.      Authority to Hire, Fire, and Promote

The record also reveals a material dispute of fact concerning plaintiff's authority to hire, fire, and make promotion and termination recommendations. On the one hand, plaintiff stated at his deposition that, in each of the four positions at issue, he made recommendations regarding whether new employees completing a 30-day probationary period should be kept on and allowed to acquire seniority status. *See* Lopez Depo. at 190:25-192:7, 196:19-197:4, 287:8-12, 320:1-25. UPS also presents evidence showing that plaintiff issued one "working discharge" to an employee. *See* Employee Record,

Def. Ex. A-7, at 013136; *see also* Lopez Decl. ¶ 4.[8]  However, plaintiff stated several times during his deposition that once an employee had progressed beyond the probationary period and been hired as a permanent hourly employee, plaintiff's power was limited to "follow[ing] the progressive steps of discipline" outlined in the union contract, culminating in referring the employee to a manager at a certain stage in the disciplinary process.  Lopez Depo. at 189:1-190:6, 284:9-19.  Plaintiff testified that on only one occasion did a manager follow his recommendation that an hourly employee be terminated.  *Id.* at 193:14-22.  Plaintiff further asserts in his declaration that on another occasion, plaintiff reported to his manager that he felt physically threatened by an employee and recommended the employee's termination, but his recommendation was not heeded.  Lopez Decl. ¶ 4.

All of this anecdotal evidence suggests that the scope of plaintiff's disciplinary authority varied to a material degree depending on which manager was supervising him.  *Id.* at 451:9-12.  Plaintiff testified that one manager, Dave Comer, permitted him more latitude.  *See id.*  Comer's declaration echoes this, stating that he "gave particular weight to [plaintiff's] recommendations regarding employee terminations."  Comer Decl. ¶ 14.[9]  However, plaintiff also stated that he was told by other managers not to recommend so many employees for termination, but rather to "work with the employees to solve the problem."  Lopez Depo. at 187:3-14.  At the very least, the evidence in the record indicates that there was variation in plaintiff's experiences based on the preferences of each of his managers.  In the Court's view, this is a material factual dispute that precludes summary judgment as to all four positions.

In light of the material factual disputed identified above, defendant's motion for summary judgment regarding the application of the executive exemption to the Hub, Preload, On-Road, and Training and Retention Supervisor positions is DENIED.

---

[8] UPS's objection to paragraphs 4-6 of the Lopez Declaration is overruled.

[9] UPS also offers several declarations in which various managers state that they "would have" given plaintiff's termination or promotion recommendations significant weight.  *See* Bloom Decl. ¶¶ 5-6; Conyers Decl. ¶ 8.  These assertions are too speculative to carry UPS's burden.  Additionally, the declarations underscore the inconsistency among managers that, in the Court's view, makes summary judgment inappropriate.

### 2. Administrative Exemption

An employer seeking to apply the administrative exemption must show that the employee: (1) is responsible for performing "office or non-manual work directly related to management policies or general business operations" of the employer; (2) "customarily and regularly exercises discretion and independent judgment"; (3) performs work requiring special training, experience, or knowledge under only general supervision; and (4) is primarily engaged in exempt job duties. Cal. Code Regs. tit. 8, § 11090(1)(A)(2).[10] UPS seeks a ruling that the five positions at issue, including the four positions discussed above and the On-Job Supervisor position, were subject to the administrative exemption.

### a. Hub, Preload, On-Road, and Training and Retention Supervisor Positions

The Court's previous conclusion that disputed issues of fact remain as to whether plaintiff regularly exercised discretion in each of these four positions applies here as well, precluding a summary determination that the administrative exemption applies to each of the four positions. In addition, the Court finds that plaintiff has raised a material factual dispute with respect to the first element of the administrative exemption: whether plaintiff was responsible for performing work directly related to UPS's management policies. The "management policies" element expressly distinguishes administrative employees from so-called "production" employees, defined as "those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce." *Bell v. Farmer's Ins. Exch.*, 105 Cal. Rptr. 2d 59, 70 (Cal. Ct. App. 2001) (quoting *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1230 (5th Cir. 1990)); *see also* 29 C.F.R. § 541.205(a) (2002). Put another way, an employee is classified as a production worker, and is therefore not subject to the administrative exemption, where his work "primarily involves the day-to-day carrying out of the business' affairs, rather than running the business itself or determining its overall course or policies." *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1070 (9th Cir. 1990).

Plaintiff does not contest that his role as a Training and Retention Supervisor fit within the "management policies" element. As discussed in detail above, however, the Preload, Hub, and On-Road

---

[10] This exemption also has a salary threshold, which plaintiff does not dispute he met.

Supervisor positions all focused on overseeing the smooth operation of UPS's packing and delivery services – the services that UPS exists to provide. As UPS points out, these positions did include ensuring that UPS personnel policies were enforced, a task that may well be administrative in nature. However, there is presently little evidence in the record concerning the time allocation between the specific supervisory tasks plaintiff performed, leaving a triable issue of fact regarding whether plaintiff's work as a Preload, Hub, or On-Road Supervisor "*primarily* involve[d] the day-to-day carrying out of [UPS'] affairs." *Bratt*, 912 F.2d ay 1070 (emphasis added).

### b. On-Job Supervisor Position

In the On-Job Supervisor position, plaintiff was responsible for riding with drivers to study their routes, then reporting back on the efficiency of each route to the Industrial Engineering team developing the new sorting system. Copeman Decl. ¶¶ 7, 12; Lopez Depo. at 131:19-24, 133:1-2. Plaintiff stated in his declaration that his review of drivers' routes and delivery methods was governed by a UPS policy known as the "340 methods," which controls "the exact procedures the drivers are to use in their delivery processes, from how to turn the ignition while simultaneously buckling the seat belt, to lifting the bulkhead door of the UPS package car, to carrying the packages, and also how many steps it should take to get to a destination from the street." Lopez Decl. ¶ 88. Plaintiff testified that his recommendations regarding potential solutions for improving driver efficiency were sometimes heeded by the engineering management team supervising his work. Lopez Depo. at 133:3-17.

Based on the above evidence, the Court finds that UPS has not carried its burden of showing that plaintiff regularly exercised discretion and independent judgment as an On-Job Supervisor. As stated above in discussing the discretion and independent judgment element with respect to the other four positions at issue, the presence of a method to be applied in a seemingly rote fashion creates a triable issue of fact regarding whether plaintiff was actually exercising discretion or merely applying his knowledge of UPS policies. Summary judgment is therefore DENIED as to the On-Job Supervisor position as well.

**B.      Remaining Issues**

   **1.      Motor Carrier Act Exemption**

  UPS additionally asserts that it is exempt from liability under the Motor Carrier Act ("MCA") for any overtime incurred while plaintiff was working as an On-Road and On-Job Supervisor from May 2004 to December 2005.  California law exempts from state overtime requirements all employees whose service is regulated by the Department of Transportation pursuant to regulations promulgated under the MCA.  *See* Cal. Code Regs. tit. 8, § 11090(3)(L)(1).  Pursuant to these regulations, an employer that qualifies as a motor carrier need not furnish overtime compensation to an employee engaged in "safety-affecting activities," including the transportation of goods moving in interstate commerce by means of a vehicle weighing more than 10,000 pounds.  49 U.S.C. § 31132(1)(A); 29 C.F.R. §§ 782.2, 782.7.  Plaintiff does not dispute that UPS is a motor carrier or that it transports goods in interstate commerce.

  Plaintiff contends that UPS has waived its MCA exemption by declining to assert the exemption as a defense to liability in a separate action brought by a different plaintiff, *Miller v. United Parcel Service, Inc.*, No. 01-2902 (N.D. Cal.), and by providing overtime compensation to its regular drivers.  The Court sustains UPS's objection to the *Miller* discovery materials now offered by plaintiff and will not consider that evidence in ruling on the present motion.[11]  Additionally, plaintiff's contention that UPS has waived the MCA exemption by paying overtime to its hourly drivers is unsupported.[12]

  The parties further dispute whether the MCA's exemption provisions apply to the entire period of plaintiff's employment as an On-Road Supervisor or only the specific workweeks (7% of the total

---

[11] First, the evidence offered is not judicially noticeable.  *See* Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").  Moreover, admissions made during discovery are typically not admissible against the admitting party in other proceedings.  *See* Fed. R. Civ. P. 36(a)(1) ("A party may serve on any other party a written request to admit, *for purposes of the pending action only*, the truth of any matters within the scope of Rule 26(b)(1)") (emphasis added).

[12] Plaintiff cites *Savaglio v. Wal-Mart Stores, Inc.*, 57 Cal. Rptr. 3d 215 (Cal. Ct. App. 2007) in support of his waiver argument.  In *Savaglio*, the state appellate court held that a party had waived its right to obtain a court order sealing certain documents where it failed to move the trial court for a sealing order, could point to "no court order granting the nonexistent motion," and had publicly filed the materials it sought to seal on the dockets of two parallel cases.  The court deemed this conduct "so inconsistent with an intent to enforce its rights . . . as to induce a reasonable belief that it had relinquished such right."  *Id.* at 223-24.  Plaintiff points to no similar relinquishment here.

number of weeks, *see* Strombom Decl. ¶ 10) during which plaintiff actually drove a package car. UPS urges the Court to apply the MCA to the entire time period of plaintiff's employment as an On-Road Supervisor, citing the following regulatory provision:

> [I]f the bona fide duties of the job performed by the employee are in fact such that he is . . . called upon in the ordinary course of his work to perform, *either regularly or from time to time*, safety-affecting activities . . . , he comes within the exemption *in all workweeks when he is employed at such job.*

29 C.F.R. § 782.2(b)(3) (emphasis added). Conversely, the provision advanced by plaintiff states:

> [I]n the case of an employee of a private carrier whose job does not require him to engage regularly in exempt safety-affecting activities . . . and whose engagement in such activities occurs *sporadically or occasionally* as the result of his work assignments at a particular time, the exemption will apply to him *only in those workweeks when he engages in such activities.*

*Id.* § 782.2(b)(4) (emphasis added).

As discussed previously in this order, plaintiff has identified a material dispute concerning the extent to which his position as an On-Road Supervisor required him to drive package cars. In the Court's view, this factual dispute also precludes the Court from deciding as a matter of law whether driving was part of the "ordinary course" of plaintiff's work or was merely a "sporadic or occasional" occurrence. Accordingly, UPS's motion for summary judgment with respect to the Motor Carrier Act exemption is DENIED.

## 2.     Meal and Rest Breaks

UPS seeks summary judgment regarding plaintiff's meal and rest break claims on the ground plaintiff has failed to put forth any evidence showing that UPS failed to provide him with breaks. California law requires an employer to "authorize and permit" rest breaks of ten minutes for every four hours worked. Cal. Code Regs. tit. 8, § 11070(12)(A). Additionally, state law provides that employers may not "require any employee to work during any meal or rest period." Cal. Lab. Code § 226.7. UPS argues that this language requires employers only to make meal and rest breaks available, not to ensure that employees actually take their breaks. UPS's position is supported by applicable precedent. *See White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1086 (N.D. Cal. 2007). Plaintiff does not dispute that no written policy or oral instructions by a manager required him to forego his breaks, but asserts that

1   the circumstances of his supervisory role sometimes required him to forego breaks "due to the press of

2   business." In the Court's view, plaintiff has raised a material factual dispute regarding whether UPS

3   actually made breaks available, precluding summary judgment on the meal and rest break claims.

### 3. Wage Statement and Waiting Time Penalty Claims

Plaintiff's third and fifth causes of action seek wage statement penalties under California Labor Code section 226 and waiting time penalties under California Labor Code section 203. UPS asserts that these causes of action are barred because UPS acted under a good faith belief that plaintiff was properly classified as exempt. UPS is correct that California law imposes liability for insufficient wage statements and untimely wage payment only if such actions were "willful" or "intentional." *See* Cal. Lab. Code § 226(e) ("An employee suffering injury as a result of a knowing and intentional failure by an employer to [keep itemized wage statements] is entitled to recover . . . damages"); Cal. Code Regs. tit. 8, § 13520 ("A willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due. However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203."). In the Court's view, however, UPS cannot carry its burden on summary judgment simply by asserting in a conclusory fashion in an argumentative pleading that it acted under a good faith belief plaintiff was exempt. The presence or absence of a good faith belief on UPS's part is a factual question that must be resolved at trial. UPS is not entitled to summary judgment on these claims.

### 4. Civil Penalty Claims

UPS additionally contends that plaintiff's claims for civil penalties under California Labor Code sections 225.5 (unlawful withholding of wages), 226.3 (failure to maintain wage statements), 558 (working hour violations), and 1174.5 (failure to maintain records) are barred for failure to exhaust state administrative grievance procedures. Plaintiff admits that he did not exhaust his claims and contends that exhaustion was not required for the claims at issue.

California Labor Code section 2699.3 generally requires exhaustion of state civil penalties claims. Plaintiff correctly points out that the first subsection of Labor Code section 2699.3, which sets

14

1   forth a discrete set of exhaustion requirements for all violations listed in Labor Code section 2699.5,

2   does not include the four penalty claims at issue. *See* Cal. Lab. Code §§ 2699.3(a), 2699.5. However,

3   a later subsection providing another discrete set of requirements encompasses "violation[s] of any

4   provision *other than* those listed in Section 2699.5." *See id.* § 2699.3(©) (emphasis added). California

5   courts have specifically held that each of the four claims at issue here is subject to section 2699.3's

6   exhaustion requirements. *See Caliber Bodyworks, Inc. v. Superior Court*, 36 Cal. Rptr. 3d 31, 39-40

7   (Cal. Ct. App. 2005) (claims under Labor Code section 225.5, 558, and 1174.5 are claims for "civil

8   penalties" within the meaning of section 2699.3 and must therefore be exhausted); *Brewer v. Premier*

9   *Golf Props.*, 86 Cal. Rptr. 3d 225, 232 (Cal. Ct. App. 2008) (same with respect to Labor Code section

10  226). In light of the foregoing, UPS's motion for summary judgment on plaintiff's civil penalty claims

11  is GRANTED due to failure to exhaust.

12

13              **5.      Unfair Competition Law Claim**

14          Plaintiff's sixth cause of action seeks restitution under California's Unfair Competition Law

15  ("UCL") of the amounts allegedly due for unpaid overtime and missed meal and rest breaks. UPS

16  asserts that plaintiff's restitution claim is barred for two reasons: first, restitution under the UCL only

17  extends to "earned" wages, which does not include meal and rest break premiums; and second, because

18  the recovery sought by plaintiff is not quantifiable.

19          UPS first asserts that meal and rest break premiums do not constitute earned wages. UPS

20  correctly cites California authority holding that only earned wages are recoverable in restitution under

21  the UCL. *See Cortez v. Purolator Air Filtration Prods. Co.*, 999 P.2d 706, 715 (Cal. 2000) ("An order

22  that *earned wages* be paid is therefore a restitutionary remedy authorized by the UCL.") (emphasis

23  added); *Loehr v. Ventura County Cmty. Coll. Dist.* 195 Cal. Rptr. 576, 581 (Cal. Ct. App. 1983)

24  ("*Earned* but unpaid salary or wages are vested property rights.") (emphasis added). UPS does not,

25  however, provide any authority in support of the proposition that wages owed for missed meal and rest

26  breaks are not earned wages. Indeed, the one case cited by UPS suggests that meal and rest break

27  recovery is a form of wages, not a penalty, *see Murphy v. Kenneth Cole Prods., Inc.*, 155 P.3d 284, 295-

28  96 (Cal. 2007), and the Court was unable to locate a single case holding that meal and rest break

15

premiums are not "earned" wages.

UPS asserts next that plaintiff's restitution claim for overtime pay must fail because it does not involve a quantifiable sum. As plaintiff points out, restitutionary recovery of unpaid overtime is expressly permitted under California law. *See Cortez*, 999 P.2d at 709, 716. In UPS's view, *Cortez* is inapposite. UPS urges the Court to apply *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 948 (Cal. 2003), in which the California Supreme Court distinguished *Cortez* and held that restitution is not available where it does "not represent a quantifiable sum owed by defendants to plaintiff." UPS's suggestion that *Korea Supply* is in any way apposite to the present case is flatly wrong. The plaintiff in *Korea Supply* represented a military equipment company during negotiations with the Republic of Korea for the purchase of certain equipment. The plaintiff stood to earn a commission if the contract was ultimately awarded to its client. After the contract was awarded to a rival manufacturer, the plaintiff sought restitution under the UCL from the winning bidder under an unjust enrichment theory. In holding that restitution was not available to the plaintiff, the California Supreme Court emphasized that "[a]ny award that plaintiff would recover from defendants would not be restitutionary as it would not replace any money or property *that defendants took directly from plaintiff.*" *Id.* (emphasis added). The court expressly distinguished *Cortez* by noting that in *Cortez*, the plaintiffs sought recovery *from their employer*, rather than from a third party who owed them nothing. *Id.* at 948.

Here, plaintiff does not seek to hold some third party liable; rather, plaintiff seeks restitution of payments not made *by UPS*. Because UPS has entirely failed to establish that plaintiff seeks something other than a quantifiable, vested sum, UPS's motion for summary judgment on plaintiff's UCL restitution claim is DENIED.[13]

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES plaintiff's motion for enforcement of collateral estoppel. (Docket No. 36). Defendant's motion for summary

---

[13] Plaintiff has abandoned his conversion and punitive damages claims by failing to address them in his opposition to UPS's summary judgment motion. *Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005).

16

judgment is hereby GRANTED as to plaintiff's civil penalties claims and DENIED in all other respects. (Docket No. 42).

**IT IS SO ORDERED.**

Dated: March 1, 2010

SUSAN ILLSTON
United States District Judge